York and Cumberland Railroad Co. *v.* Clark.

————◆————

YORK & CUMBERLAND RAILROAD CO., *Petitioners for Review, versus* THOMAS M. CLARK.

No exceptions will lie to the refusal of the Judge at *Nisi Prius*, to grant a review.

PETITION FOR REVIEW of an action in which the defendant formerly recovered judgment against the petitioners. At the hearing, before DAVIS, J., the petition was ordered to be dismissed, and the petitioners filed exceptions.

As the only question determined by the full Court was whether exceptions would lie to such an order, a report of the facts in the case becomes unnecessary. The case was elaborately argued by

*J. C. Woodman,* for petitioners,

*F. O. J. Smith,* for defendant.

The opinion of the Court was drawn up by

MAY, J.—This case comes before us upon exceptions taken to the ruling of the Judge at *Nisi Prius*, in ordering the dismissal of a petition for review upon the whole case as presented before him. His adjudication, therefore, must have involved the determination of all such questions of law and fact as arose at the hearing. That both questions of law and fact were embraced in that adjudication is apparent, from the statement of the case, as contained in the exceptions. There is, however, no specific ruling in relation to any matter of fact or law, other than what relates to the admissibility of certain evidence, which was objected to by the petitioner, and admitted. Upon the merits, the only ruling consists in the order of dismissal.

Assuming that this order, in the judgment of the full Court is erroneous, and that the review prayed for should have been granted, the question arises whether this Court have any power of revision upon exceptions taken to the action of the presiding Judge. It is clear that, if exceptions will lie and are sustained, the case can only be remanded for a rehearing at some *Nisi Prius* term in the county from which it came. If error has occurred, we have no power to render such a judgment, as, in view of all the facts, law and justice may require.

It is nevertheless true, as is often repeated in the learned argument for the petitioner, that courts are established for the administration of right and justice, "freely and without sale, completely and without denial, promptly and without delay." The *modes*, however, by which these ends are to be accomplished, are fixed by the constitution and the laws. The great end of all judicial investigation and proceedings is the establishment of justice between the parties litigating. Judges are appointed, and juries are empanneled for this purpose, and appropriate functions are assigned to each.

While it is true that juries are the judges of the facts, and courts, of the law, it is equally true that only such facts are

for the jury, as enter into the final judgment of the case, whilst all the facts, which are merely incidental to the trial of a cause, belong entirely to the Court. Thus, in jury trials, whether civil or criminal, the facts, having a bearing upon the issue which is being tried, are for the jury, and their finding will be conclusive upon the parties, unless it afterwards appears, to the satisfaction of the Court, that there are other facts affecting the action, or fitness of the jury which tried the cause; or which, after using due diligence to ascertain them, were *unknown* to the party at the trial, and *subsequently* discovered, on account of which justice requires that a new trial should be had.

Whether a verdict or a judgment which has been rendered shall be set aside, is a question for the Court, and the facts bearing upon that question, as well as the law, belong exclusively to that particular tribunal to which, under our statutes, the power which is invoked is intrusted. In some cases, the facts, which are to be determined as the basis of action, are left to be decided by a single Judge; as where the ground of the motion is newly discovered evidence or the relationship of one of the jurors to a party in the suit. So, too, in the case of a judgment upon default, whether the party against whom it was rendered had due notice of the suit, or submitted to a default without any undue negligence on his part, through some misapprehension or mistake, when he had a reasonable ground of defence, and intended to have made it, and whether such party is entitled to a further hearing, are all questions for a single Judge.

In other cases, the action of the law court is required; as where the motion is to set aside a verdict as against the evidence. The law deems a verdict which has been rendered by the concurrence of twelve men, duly qualified to sit, and who are presumed to have been impartial, unbiased, and beyond the influence of any corrupt motive, too sacred to be set aside as against evidence by a single Judge. The statute, therefore, in such a case, requires the concurrence of a full Court. R. S. of 1857, c. 77, § 17.

It is very apparent, from the numerous authorities cited by the counsel for the petitioner, that the class of questions above referred to, relating as they do, not to the final disposition of the cause, but simply to the incidents attending its progress, are addressed to the discretion of the Court, whether that Court consists of a single Judge or a full bench. To be sure, that discretion is not to be exercised arbitrarily, but to be guided and controlled, in ·view of all the facts, by the law and justice of the case, subject only to such rules of public policy as have been wisely established for the common good. The Judge, at *Nisi Prius*, and the full bench are to be governed by the same principles, and to seek the same great end. · Each may err, but both are presumed to act with that legal wisdom and integrity which their position demands.

Until the passage of the R. S. of 1857, the decision of a single Judge, in questions of this kind, which were by law left to him, was final. His decision was not open to exceptions. Such has been the almost uniform policy of the law. The counsel for the petitioner, however, while he concedes this, contends that the case of a petition for review is an exception to the common rule. The question presented on such a petition is simply whether an existing adjudication shall stand or be set aside. It is addressed to the discretion of the Court as much as a motion to set aside a verdict, or for the continuance of a suit. The decision of the Judge or Court upon it determines nothing finally between the parties. No reason is perceived, therefore, in the case of a petition for review, why any different rule should be applied to a decision by a single Judge upon it, than is applied to other cases which are precisely similar in their character and effect. Still, if the statutes have made any distinction it must be enforced.

No question as to the right to except to an adjudication upon a petition in review had arisen in this State prior to 1852. Before the statute of that year, c. 246, § 13, such cases were heard by the full Court. By that statute, it was provided " that all petitions for review may be heard and determined by the presiding Justice, at any term held for the

trial of jury causes, subject to exceptions to any matter of law by him so decided and determined." By the R. S. of 1857, c. 89, § 1, the same jurisdiction is conferred upon a single Justice, but this statute contains no provision with reference to any exceptions to his adjudication. If such right exist, it can only be by force of some other statute. "The granting of new trials at common law," says C. J. WHITMAN, in *Moulton* v. *Jose*, 25 Maine, 76, "is matter of discretion, and not subject to exceptions." The statute of 1822, c. 193, § 5, and the R. S. of 1841, c. 97, § 18, providing for summary exceptions, restrict the right to except to matters of law. Under these statutes, as well as that of 1852, before cited, all matters of fact or of discretion were left wholly to the determination of the presiding Judge, and his decision in relation thereto was final. *Moody* v. *Larrabee*, 39 Maine, 283; *Emerson* v. *McNamara*, 41 Maine, 566.

That portion of the statute of 1852 which provided for exceptions in matters of law, arising upon the hearing of petitions for review, seems to have been inserted to confer a right, which, under the then existing statutes, did not exist. Without such provision, the adjudication of a single Justice, upon a petition for review, would, undoubtedly, have fallen within the general current of authorities, wherein it is decided that exceptions will not lie to matters of discretion.

In view of the numerous decisions, and the statutes, we think it clear that, prior to the R. S. of 1857, c. 77, § 27, exceptions were not allowable in cases like the present, unless some question of law was therein distinctly presented.

The question now arises, whether, under the provisions of the statute last cited, the right to except *generally* in cases of this description has been conferred. If it has, it would seem to be open alike to both parties. Such a result might tend to obstruct the administration of right and justice "promptly and without delay." If a new trial should be granted, and the party against whom the decision should happen to be should except, before the question upon the exceptions could be considered and determined, much time might necessarily

elapse, and justice, which is the great end to be obtained, would be delayed. By this statute, it is provided that, " when the Court is held by one Justice, a party aggrieved by any of his opinions, directions or judgments in any civil or criminal proceeding, may, during the term, present written exceptions in a summary manner, signed by himself or counsel, and, when found to be true, they shall be ,allowed and signed by such Judge." In this revision of the statutes, the words " in any matter of law," contained in the preceding statutes, are entirely omitted. Does this change in the phraseology of the statutes sufficiently show that it was the intention of the Legislature to subject the opinions, directions or judgments of a single Judge, in matters of discretion submitted to him, to revision upon exceptions by the law court.

That the language of the present statute is sufficiently broad for that purpose is not to be questioned. Literally, it extends to any of the opinions, directions and judgments of any Justice, sitting at *Nisi Prius*, in any civil or criminal proceeding. But we are not satisfied, when considered in connection with the common law and the long series of decisions under the former statutes, that the legislative intention in the recent revision of the statutes was to allow exceptions in matters of discretion. To give it such a construction, would open the door for exceptions upon motions for continuance, as well as upon every other incidental or side issue which might arise in the progress of a cause, and be determined by a single Justice in the exercise of his discretionary power. We think such a radical change, in the long established mode of administering justice, would not have been left to mere implication, and, if it had been intended to subject the discretionary power of the Judge, in all cases, to the revision of a full Court, the Legislature would have manifested that intention by a direct and unequivocal use of language to that effect. If the generality of the language in the present statute is to be limited at all, (and it is conceded in the argument of the petitioner's counsel that it ought to be in relation to such questions as are merely incidental and interlocutory,) it is not perceived why

the limitation should not be held to apply to all questions of fact and discretion to the same extent it existed before.

It is urged that the right to except, under the present statute, should be extended to adjudications upon petitions for review, because, it is said, that a refusal to grant a new trial is decisive of the whole case, and therefore final. It is true, the effect of such refusal is to let the former judgment stand. But this effect is merely incidental, and follows upon such adjudication no more certainly than it does in the case of a refusal upon motion to take off a default or a nonsuit. So a refusal of the presiding Judge to grant a continuance may incidentally work the same effect. The final determination in the case is the judgment that stands.

In the case of *Leighton* v. *Munson*, 14 Maine, 213, C. J. Shepley, in announcing the opinion of the Court, remarks, that "the party can have no strictly legal right to have an action, once disposed of," (in that case it was disposed of by a Judge in the exercise of his discretion,) "restored for that cause simply upon motion." He further says, "this Court," (that is, the law Court,) "may exercise such a legal discretion upon a proper application for a new trial, but the party might as properly except to the refusal of the Judge to continue the action to the next term, to enable him to obtain his testimony, as to except to the refusal to restore it upon motion, after it had been properly disposed of." As the same power which was vested in the law Court, at the time of this decision, is now vested in a single Justice, no reason is apparent why such Justice, in a hearing upon a petition for review, is not clothed with the same discretion as the law Court formerly was. In both cases, the discretion to be exercised must be the discretion of the particular tribunal in which the law has placed it. An exception to the refusal of a Judge to take off a default stands upon the same ground. *Thornton* v. *Blaisdell*, 37 Maine, 195. As there is no substantial difference in the effect of an adjudication upon a petition for review, and upon a motion to take off a nonsuit or default, all alike being matters of discretion, there is no reason why the same rule

in regard to the right of exceptions should not be applied to each, and to all other cases where a like discretionary power is exercised.

Perceiving no error in regard to any specific question of law raised upon the exceptions, the conclusion to which the Court have arrived, in view of the whole subject, and the laborious and able argument of the counsel for the petitioner, is, that the exceptions must be dismissed.

*Exceptions dismissed.*

TENNEY, C. J., HATHAWAY, CUTTING, GOODENOW, and DAVIS, J. J., concurred.